United States District Court
Southern District of Texas
**ENTERED**
September 25, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UFALLER HENNINGAN,** § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-00366 |
| § | |
| **SCHINDLER ELEVATOR** § | |
| **CORPORATION,** *et al.*, § | |
| § | |
| Defendants. § | |

### MEMORANDUM & ORDER

This is a premises liability case resulting from Plaintiff Ufaller Henningan's injury in an elevator maintained by Defendant Schindler Elevator Corporation ("Schindler"). Before the Court is Schindler's Motion for Summary Judgment. ECF No. 32. For the reasons that follow, the Court finds that the Motion should be **GRANTED**.

### I.     BACKGROUND

On May 3, 2021, Plaintiff Ufaller Henningan was delivering packages at the Nordstrom in the Galleria Mall. ECF No. 1-1 at ¶ 9. She was taking East Elevator 4 to the first floor when the power went out. The elevator then dropped approximately two floors before it stopped between the first and second floors, injuring Henningan. *Id.* The parties agree that the power outage triggered the incident.

Henningan subsequently brought the present premises liability case against Schindler as well as Simon Property Group and HG Galleria in Texas state court. ECF No. 1-1. Defendant Schindler removed the suit to this Court. ECF No. 1. The claims against Simon Property Group

1

and HG Galleria were dismissed on January 4, 2024, after the parties submitted an Agreed Motion to Dismiss. ECF No. 43.

Schindler, the only remaining defendant, moved for summary judgment in October 2024. ECF No. 32. Henningan moved for a continuance of its response deadline in order to obtain additional summary judgment evidence through discovery. ECF No. 33. The Court granted the continuance. Minute Entry 10/30/2023. The Court also granted a subsequent unopposed continuance so that Henningan could continue to gather summary judgment evidence. ECF No. 53. Henningan now responded to the pending Motion, ECF No. 67, and Schindler replied, ECF No. 68.

Henningan then filed a supplemental response to the pending Motion requesting that the Court continue its consideration of the Motion until the parties could depose Plaintiff's expert witness. ECF No. 72. Defendant agreed to the brief continuance, and the Court granted the continuance and allowed the parties to submit supplemental briefing on the impact of the deposition on the pending Motion. ECF No. 73, 74. The parties conducted the deposition on September 4, 2024 and filed supplemental briefing. ECF No. 77, 79. Defendant's Motion for Summary Judgment is now ripe for consideration.

II.     **SUMMARY JUDGMENT STANDARD**

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue as to a material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

"[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718-19.

### III.    ANALYSIS

Henningan brings a premises liability claim in which she asserts she was an invitee. For an invitee to prevail on such a claim, they must prove "(1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; and (4) the owner's failure was a proximate cause of injury to the invitee." *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 883 (Tex. 2009); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (same).

Schindler moves for summary judgment on two grounds: (1) Henningan cannot show that any action or inaction of Schindler's was a proximate cause of her injuries and (2) Henningan cannot show that Schindler had a duty to make the premises safe or a duty to warn. ECF No. 32 at 10. Schindler also objects to Henningan's expert report as inadmissible hearsay. ECF No. 68 at 3.

### a. Proximate Cause

To prevail, Henningan must show that Schindler engaged in an act or omission that was the proximate cause of her injuries. "Breach of a duty proximately causes an injury if the breach is a cause in fact of the harm and the injury was foreseeable." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016). "Cause in fact requires 'proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission ('but for' the act or omission), the harm would not have occurred.'" *Id.* (quoting *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 122 (Tex. 2009)). "Conjecture, guess, and speculation are insufficient to prove cause in fact and foreseeability." *Id.* Henningan carries the burden of proof on causation. *Id.*; *Fort Brown*, 285 S.W.3d at 883.

The parties agree that the power outage caused the elevator to fall. ECF No. 32 at 6, No. 67 at 5-6. However, Henningan contends that "[t]he power outage was simply the catalyst that ignited the hazardous condition that was East Elevator 4 and its improper maintenance." ECF No. 67 at 11.

Unfortunately, Henningan fails to put forth a cogent theory for how any specific act or omission of Schindler's caused the elevator to fall after the power outage. Although she gestures broadly to alleged inadequate maintenance, her briefing does not identify any specific way in which Schindler failed to properly maintain the elevator or how such maintenance failures caused this incident.

Henningan primarily relies on her expert, Joseph Stabler, to prove causation. However, Stabler's report likewise fails to put forth any specific theory that a reasonable jury could find satisfies Henningan's burden to prove causation. Stabler notes that in the year leading up to the power outage, the elevator had five "Control Battery Charge Time Expired events" and four

"Overtemp Motor events." ECF No. 72-1 at 5. He states that Schindler failed to conduct any root cause analysis of these issues after receiving notice of them. *Id.* at 11. However, he fails to provide any explanation for how these failures could relate to the elevator falling on the date of the incident.

Looking first at the control battery errors, Stabler's report indicates that a "Control Battery Charge Time Expired" error message refers to a battery inside the controller that is constantly being recharged so that if power is lost it will keep an "SMLCD screen" energized. ECF No. 72-1 at 6. It appears that the SMLCD screen allows one to look at error logs for the purpose of troubleshooting issues with the elevator. *Id.* Thus, it seems that this battery's only purpose is to power a screen system that would allow a technician to troubleshoot issues with the elevator.

As for the "Overtemp Motor" error message, Stabler's report does not indicate what this message means or how it is in any way related to the incident. Based on other evidence in the record, it appears this message indicates that the elevator's motor was too hot and shut down. ECF No. 67-1, Galer Dep. 64:19-24.

While Stabler claims that Schindler should have performed maintenance on the elevator after it was notified of these errors, neither Stabler's report nor any other evidence identified by Henningan indicates how these errors could have possibly caused the incident. In fact, the elevator components at issue appear to be wholly unrelated to any mechanism in the elevator that would have prevented it from falling or that would stopped the fall more quickly after the power went out. There is no evidence in the record that the control battery failed during the power outage or that it powers anything besides a screen in the elevator that can be used to troubleshoot other mechanical failures. Henningan even admitted in the deposition that the control battery did not cause the elevator to stop. ECF No. 79-1, Stabler Dep. at 44:15-19, 45:1-4. The same is true for the motor, as nothing in the record indicates it was overheated during the incident or that such

5

overheating could have contributed to the incident. *Id.* at 49:6-11 (admitting there is no record of an overtemp motor event on May 3, 2021). In sum, Henningan fails to proffer any theory for how lack of maintenance of these two components could have led to the elevator falling after the power outage.

Nor do the many conclusory opinions contained in Stabler's report and deposition suffice to save Henningan's claim. Stabler states that "the incident in which Plaintiff, Ufaller Henningan was injured would not normally occur absent the failure of those persons responsible to care for, examine, adjust, maintain, repair, service and troubleshoot the elevator to ensure proper operating conditions." ECF No. 72-1 at 23. He also states, "failure to maintain, service and repair the elevator in accordance with the aforementioned maintenance agreement, adopted codes, laws and standards, may cause or contribute to abnormal movements of the elevator including rapid acceleration and deceleration rates and abrupt stops, as mentioned herein." *Id.* at 22. Stabler reiterated this analysis at his deposition and stated that, in the absence of proper maintenance, an elevator can experience unusual issues during a power outage. ECF No. 79-1, Stabler Dep. at 16:7-10. Stabler went on to describe some of the elevator mechanisms that can malfunction during a power outage, such as control components and operating systems. *Id.* at 16:17-17:7. Noticeably absent from Stabler's findings is any conclusion as to what specific maintenance failures could have caused *this* incident. As Hennigan has not provided any evidence that Schindler failed to maintain a component of the elevator that could have led to the May 3, 2021 incident, there is insufficient evidence for a reasonable jury to find she has met her burden of proving causation. Because summary judgment is appropriate on these grounds, the Court need not reach Schindler's remaining arguments.

## IV.     CONCLUSION

For the foregoing reasons, Schindler's Motion for Summary Judgment is **GRANTED**. Henningan's premises liability claim against Schindler is **DISMISSED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 25th day of September, 2024.

_____
Keith P. Ellison
United States District Judge